UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| ALBUS DENIZCILIK LTD STI )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>PROGRESS BULK CARRIERS LTD, )<br>)<br>Defendant, )<br>)<br>) | 1:15-cv-01256-KAM-SMG |

**GARNISHEE MED BROKERAGE & MANAGEMENT CORP.'S
MOTION TO VACATE THE RULE B ATTACHMENT AND QUASH
<u>PLAINTIFF ALBUS DENIZCILIK LTD STI'S SUBPOENA</u>**

K&L GATES LLP
599 Lexington Avenue
New York, New York 10022
Tel: 212-536-4021

*Attorneys for Garnishee
Med Brokerage & Management Corp.*

Table of Contents

|   |   | Page |
|---|---|---|
| FACTUAL BACKGROUND | | 1 |
| ARGUMENT | | 2 |
| | A. The Rule B Attachment Should Be Vacated And The Subpoena Should Be Quashed | 2 |
| | B. Albus Is Not Entitled To Further Discovery | 5 |
| | C. If The Court Does Not Vacate The Attachment The Subpoena Should Still Be Quashed Pursuant To Rule 45 Because It Is Not Relevant | 7 |
| | D. The Court Should Sanction Albus Pursuant to Rule 45(d) | 9 |
| CONCLUSION | | 11 |

### GARNISHEE MED BROKERAGE & MANAGEMENT CORP.'S MOTION TO VACATE THE RULE B ATTACHMENT AND QUASH PLAINTIFF ALBUS DENIZCILIK LTD STI'S SUBPOENA

Pursuant to Supplemental Rule B and Rule 45 of the Federal Rules of Civil Procedure, Non-Party Garnishee Med Brokerage & Management Corp. ("MED") moves to vacate the Rule B Attachment and the quash the document subpoena issued by Plaintiff Albus Denizcilik Ltd. STI ("Albus"). As an initial matter, Albus has failed to demonstrate that Defendant Progress Bulk Carriers Ltd. ("PBC") has any attachable property in the district. The Rule B attachment should be vacated and the subpoena quashed on that basis alone. The subpoena should also be quashed because it is irrelevant, overly broad and represents a fishing expedition for documents that blatantly violates both the spirit and the letter of Rule B and Rule 45.

### FACTUAL BACKGROUND

On or about September 3, 2010, Plaintiff Albus entered into a time charter party with Defendant PBC (the "Charter Party"). Doc. 1, ¶ 4. When differences arose relating to the Charter Party, Albus and PBC submitted those differences for resolution for binding arbitration in London. *Id.*, ¶¶ 5-6. The arbitrators rendered a Final Award in Albus's favor, dated January 31, 2014, directing PBC to pay Albus $763,000, plus interest. *Id.* ¶¶ 7-9. On March 11, 2015, Albus filed the instant action "to obtain jurisdiction over Defendant in this District and to obtain security in favor of Plaintiff for its claims against Defendant." *Id.*, ¶ 13. Albus alleged in relevant part that, upon information and belief, MED has within this District "possession or control over property belonging to the Defendant or in which Defendant otherwise has a beneficial interest that is subject to attachment." *Id.*, ¶ 17.

On April 30, 2015, Judge Matsumoto issued an Order for Issuance of Process of Maritime Attachment and Garnishment (the "Attachment"). Doc. No. 12. On May 11, 2015, Albus served the Attachment on MED, together with Interrogatories. *See* Doc. No. 15; a copy of the Interrogatories is

attached as Exhibit A to the Kontakis Declaration. MED answered the Interrogatories and explicitly stated that "it does not hold any property belonging to defendant PBC as described in the Interrogatories." Kontakis Declaration, Exhibit B. p. 3. MED also answered the Complaint and expressly denied Albus's allegation that MED has "control over property belonging to Defendant or in which Defendant otherwise has a beneficial interest that is subject to attachment." *See* Doc. No. 16, ¶ 17. MED objected to the remaining interrogatories due to the fact that they requested information beyond that which is required under Rule B. *See* Kontakis Declaration, Exhibit B, p. 3.

On October 2, 2015, Albus, PBC and MED participated in a telephone conference with Magistrate Gold. *See* Doc. No. 18. Over the objections of both PBC and MED, Judge Gold authorized Albus to proceed with further discovery. *Id.* However, Judge Gold noted that "if the garnishees contend that binding case law precludes plaintiff from conducting discovery for any reason, **including their assertion that they have no property of the defendant**, they may promptly submit a motion for a protective order." *Id.* (emphasis added).[1]

## ARGUMENT

**A.     The Rule B Attachment Should Be Vacated And The Subpoena Should Be Quashed**

MED responded under oath to Albus's interrogatories and affirmatively and explicitly stated that it does not, and did not at the time the order was served--nor at any time, for that matter--possess or control any of PBC's assets within the District. Rule B and Second Circuit precedent leave no room for doubt: the attachment must be vacated.

Rule B is "a formal recognition of the common law principle that attachment of a defendant's property was often the only way to gain jurisdiction over an admiralty or maritime defendant." *Limonium Maritime SA v. Mizushima Marinera SA*, 961 F. Supp. 600, 605 (S.D.N.Y. 1997). To be entitled to a Rule B attachment, the plaintiff must show 1) that a claim

---

[1] Because a subpoena was required to be served on MED, a non-party, under Rule 45 rather than Rule 26, MED must file the instant motion rather than move for a Protective Order.

exists against the defendant within the admiralty jurisdiction; 2) that the defendant has no presence within the district; and 3) that some of defendant's property exists within the district. *Id.* at 605-606. The third requirement--the location of property of the defendant within the district--is "the most basic [] requirement to Rule B attachment." *Id.* at 606; *see also Blueye Nav., Inc. v. Oltenia Nav., Inc.*, Nos. 94 Civ. 1500 (LAP), 94 Civ. 2653 (LAP), 1995 WL 66654, at *4 (S.D.N.Y. Feb. 17, 1995).

> The Second Circuit recently clarified the reach of Rule B attachments and explained:
>
> For maritime attachments under Rule B . . . the question of ownership is critical. As a remedy quasi in rem, the validity of a Rule B attachment depends entirely on the determination that the res at issue is the property of the defendant at the moment the res is attached. Because a requirement of Rule B attachments is that the defendant is not "found within the district," the res is the only means by which a court can obtain jurisdiction over the defendant. If the res is not the property of the defendant, then the court lacks jurisdiction

*Shipping Corp. of India Ltd. v. Jaldhi Overseas Pte. Ltd.*, 585 F.3d 58, 69 (2d Cir. 2009) (internal citations omitted).

In other words, as explicitly explained in both *Blueye and Limonium*, "[t]he caselaw, the authorities, and basic logic demonstrate that no quasi in rem jurisdiction under Rule B can exist without some res to be attached. In fact, for Rule B attachment to be appropriate, it is clear that the *property must be located within the district* and the property must belong to the defendant." *Limonium,* 961 F. Supp. at 607 (emphasis in original) (citations omitted). Moreover, the Second Circuit makes clear that ""[w]here the order of attachment is left with a third-party garnishee, the levy is absolutely void unless the garnishee has some property belonging to the defendant or owes the defendant a debt at the time the order is left with him." *Reibor Intern. Ltd. v. Cargo Carriers (KACZ-CO.) Ltd.*, 758 F.2d 262, 266 (2d Cir. 1985) (internal citations omitted).

Because a court has no jurisdiction unless there is attachable property within the district, once an order of attachment is vacated, any associated subpoenas must necessarily be quashed. *See, e.g., Limonium,* 961 F. Supp. at 609 (noting that "the writs of attachment are void. . . [and] [a]ccordingly, the subpoenas issued to the garnishee are quashed").

Here, as permitted by Rule B, Albus issued interrogatories to MED to determine whether MED possessed any of PBC's assets in this District. MED responded that it does not and did not at the time of service. In light of the fact that the garnishee does not possess Defendant's property, the Rule B Attachment must be vacated and the subpoena must be quashed.

*Blueye* is particularly instructive here. In *Blueye*, the garnishee banks responded that no assets of defendant were located in its possession in the district. The plaintiffs nevertheless wished to maintain the action and conduct further discovery to try and identify some of the Defendant's property. The court held that

> [t]o continue this action on the basis of Rule B attachment on the mere speculation that plaintiffs might be able to locate defendants' property sometime in [the next year] would be inappropriate . . . Continued exercise of jurisdiction over the defendants on this basis would violate both the letter and spirit of Supplemental Rule B.

*Blueye,* 1995 WL 66654, at *5.

The court declared the writ of attachment void because no property was attached and therefore the attachment was no longer permissible.

Moreover, Judge Daniels of the Southern District recently considered a similar attempt by Albus to obtain jurisdiction over PBC by serving an attachment order on a garnishee that did not possess attachable property. *Albus Denizcilik v. Progress Bulk Carriers*, No. 14 Civ. 080972 (GBD), 2015 U.S. Dist. LEXIS 140654 (S.D.N.Y. Oct. 9, 2015). There, as here, Albus "failed to demonstrate that PBC has attachable property within the district." *Id.* at *5. Judge Daniels therefore vacated the order of attachment. *Id.*

As garnishee, MED has standing to move to have the order vacated. *See, e.g., Clipper Shipping Co., Ltd. v. Unimarine Bulk Transport, Inc.*, 790 F. Supp. 56 (D. Conn. 1992); *Aurora Maritime Co., Ltd. v. Abdullah Mohamed Fahem & Co.*, 890 F. Supp. 322 (S.D.N.Y. 1995) (J. Sotomayor) (evaluating a garnishee's motion to vacate Rule B attachment on the merits). In *Clipper*, the garnishee moved to have the Garnishment Order vacated. The court held that because the garnishee did not owe the defendant a debt (or otherwise possess defendant's assets) **when it was served with the Garnishment Order**, said order "must be vacated." *Clipper*, 790 F. Supp. at 62.[2]

MED therefore respectfully requests that the court vacate the Rule B attachment and quash the subpoena.

**B. Albus Is Not Entitled To Further Discovery**

Despite the fact that Albus has failed to identify any of PBC's property in the district, Albus asks this court to allow it to conduct a fishing expedition to try and locate property, including property that Albus does not believe to be in MED's possession. For example, Subpoena Request 4 seeks "documents sufficient to identify all banks, as well as holders or owners of the concerned accounts at such banks, from which payments were made by Defendant to Med." Kontakis Declaration, Exhibit C. It is clear that Albus is attempting to use Rule B to discover information about defendant's assets despite the fact that those assets are not in MED's possession or control. It is equally clear that Albus has no legal basis for these attempts.

Indeed, a plaintiff in the Southern District of Texas sought exactly the type of further discovery that Albus now seeks, and the denial of that request was affirmed by the Fifth Circuit.

---

[2] MED notes that the Court appeared to have some concerns as to why PBC did not move to have the attachment vacated by a certain date pursuant to Judge Matsumoto's order. MED takes no position as to whether PBC could move to have the order vacated. In any event, it does not matter in light of MED's standing.

*Geneve Butane, Inc. v. National Oil Corp.*, 551 Fed. Appx. 185 (5th Cir. Jan. 8, 2014). There, as here, each garnishee "stated, under oath, that it has no property, debt, assets, or obligations of the defendant." No. 4:12-cv-02205, Doc. 60, p. 3 (S.D. Tex. Nov. 7, 2012)[3]. The plaintiff nevertheless asked the court "to allow additional discovery to test the veracity of Garnishee's responses." *Id.* at 4. The lower court held that additional discovery was not warranted because "Plaintiff ha[d] identified no factual basis to challenge the veracity of the sworn responses." *Id.* The court also explained that Rule B discovery beyond interrogatories has historically been limited to cases where the plaintiff first established that a *res* was present in the district. *Id.* at 4-5.

The Southern District of New York reached a similar conclusion in *Blueye*, where it explicitly considered "whether the plaintiff should be allowed discovery [after the vacatur of the attachment] in order to locate the assets of the defendant within this district." *Blueye*, at *6. The court refused to allow such discovery where no property was attached, noting that "because I have no jurisdiction over defendants, plaintiffs' actions must be dismissed." *Id; see also Limonium*, 961 F. Supp. at 609 (explaining that, pursuant to *Blueye*, "the district court lack[s] authority to grant discovery where no property has been attached").[4]

The Court has no jurisdiction over PBC, and therefore Albus's attachment must be dismissed. This precludes any basis upon which Albus could request additional discovery from MED.

---

[3] A copy of the district court's Memorandum and Order has been attached for the Court's convenience as Exhibit D to the Kontakis Declaration.

[4] While not cited by the district judge, *Blueye* and *Limonium* provided the primary legal support for the *Geneve* garnishee's argument--accepted by the district court and affirmed by the Fifth Circuit--that the court had no jurisdiction to authorize further discovery because there was no *res* in the district.

C. **If The Court Does Not Vacate The Attachment The Subpoena Should Still Be Quashed Pursuant To Rule 45 Because It Is Not Relevant**

Rule 45 provides that "on timely motion, the issuing court must modify or quash a subpoena that . . . subjects a person to undue burden." *AP Links LLC v. Russ*, 299 F.R.D. 7, 11 (E.D.N.Y. 2014) (internal citations omitted). "The party issuing the subpoena must demonstrate that the information sought is relevant to the allegations and claims at issue **in the proceedings.**" *Id.* (emphasis added). Moreover, a "subpoena issued to a non-party pursuant to Rule 45 is subject to Rule 26(b)(1)'s overriding relevance requirement." *Warnke v. CVS Corp.*, 265 F.R.D. 64, 67 (E.D.N.Y. 2010). Rule 26(b)(1) provides that:

> The scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to the relevant information, the parties' resources, **the importance of discovery in resolving the issues**, and whether the burden or expense of the proposed discovery outweighs the likely benefit.

Fed. R. Civ. P. 26(b)(1) (emphasis added).

Albus filed its complaint on March 11, 2015. It sought the following forms of relief:

a. That process in due form of law according to the practice of this Court may issue against Defendant;
b. That the court, in accordance with provision of Rule B of the Supplemental Rules for Admiralty or Maritime Claims, direct the issuance of Process of Maritime Attachment and Garnishment attaching all assets within the District owned by Defendant or in which Defendant has a beneficial or otherwise attachable interest up to the amount of, at least, $769,000;
c. That judgment be entered against Defendant and in favor of Plaintiff in the amount of, at least, $769,000, plus interest, costs, and attorneys' fees; and
d. That the Court grant such other, further and different relief as may be just, proper and equitable in the premises.

Doc. No. 1, ¶ 18.

It is clear from the prayer for relief, from the complaint generally, and from Rule B itself, that the claims at issue in the proceedings involve PBC's attachable assets within the district.

Indeed, the parties concede that a Final Award was issued in Albus's favor in the amount of $769,000 and that PBC has not paid that award. *See* Doc. No. 16.

Accordingly, Albus must demonstrate that the subpoena is relevant to the Rule B attachment and important to resolving the issues underlying that attachment. Rule B "has a twofold purpose: to obtain jurisdiction over the defendant and to obtain security for any judgment awarded." *Limonium*, 961 F. Supp. at 607. The current outstanding issue is whether or not MED possessed any of PBC's property at the time it was served with the Order. MED has answered that question in the negative via its interrogatory responses. In fact, MED has never possessed any of PBC's assets at any time. For the reasons stated above, the lack of PBC's property in the district necessitates the vacatur of the attachment. Even assuming, *arguendo*, that Albus is entitled to further discovery, such discovery must similarly be limited to whether MED possessed any of PBC's assets. MED has already responded to this inquiry. Any other requests are irrelevant, and must be quashed.

Even if the subpoena requests were not *per se* irrelevant, the subpoena should still be quashed because it is nothing more than a fishing expedition. In *Concord Boat Corp. v. Brunswick Corp.*, the court found "that almost half of the twenty-two requests listed . . . fail to limit the scope of inquiry . . . These requests go beyond any reasonable attempt to identify documents pertinent to [the underlying dispute]." 169 F.R.D. 44, 51 (S.D.N.Y. 1996). The court therefore found that the subpoena was "overbroad on its face, and as such, falls within Rule 45(c)(3)(A)'s prohibition on subpoenas that subject a witness to undue burden." *Id.* In light of the fact that the subpoena was a "fishing expedition," the court quashed the subpoena in its entirety. *Id.* at 51-54; *see also Catskill Development, LLC v. Park Place Entertainment Corp.*,

206 F.R.D. 78, 93 (S.D.N.Y. 2002) ("[T]he Magistrate Judge correctly quashed the Key Bank subpoena because the request for documents is nothing more than a fishing expedition.").

Here, **every single one** of Albus's subpoena requests is overbroad on its face. Each request seeks information dating back to at least 2012, with ten of the fifteen requests seeking information dating back to 2010. *See* Kontakis Declaration, Exhibit C. Albus has not and cannot offer any explanation as to how records from three years ago--let alone five years--have any bearing on whether MED possessed PBC's assets when the Process was served in May 2015. Indeed, nothing about PBC's assets was relevant to Albus **in any way** until the date the attachment order was issued and served (i.e. May 11, 2015).

Albus also seeks information about PBC's assets that are not within the district. *See, e.g.,* Doc Request No. 5 ("For the period of January 1, 2010 through the present, all invoices or payment statements (including but not limited to freight statements or hire statements) issued by or on behalf of PBC **to anyone**.") (emphasis added). New York law is clear that a "subpoena that pursues material with little apparent or likely relevance to the subject matter is likely to be quashed even where the burden of compliance would not be onerous, particular where, as here, the person or entity on whom the demand is made is not a party to the action." *Corbett v. eHome Credit Corp.*, No. 10-CV-26 (JG)(RLM), 2010 WL 3023870, at *3 (E.D.N.Y. Aug. 2, 2010).

Accordingly, the subpoena is not only irrelevant; it is also an unduly burdensome fishing expedition. It must be quashed.

### D. The Court Should Sanction Albus Pursuant to Rule 45(d)

Rule 45 provides that a "party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1). Moreover, it mandates that the "court for the district where compliance is required **must** enforce this duty and impose an appropriate sanction—which may

include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply." *Id.* (emphasis added).

A court considering sanctions under Rule 45 must conduct a two part inquiry. *See, e.g., Molefi v. Oppenheimer Trust*, No. 03 CV 5631(FB)(VVP), 2007 WL 538547, at *2 (E.D.N.Y. Feb. 15, 2007). "The court must determine whether the subpoena imposed an undue burden on [the recipient], and, if so, what, if any, 'reasonable steps' [the plaintiff] took to avoid imposing such a burden." *Id.*

"When the purpose of a discovery request is to gather information in proceedings other than the pending suit, discovery is properly denied." *Night Hawk Ltd. v. Briarpatch Ltd., L.P.*, No. 03 Civ.1382 RWS, 2003 WL 23018833, at *8 (S.D.N.Y. Dec. 23, 2003) (granting motion to quash subpoena and awarding attorneys' fees to the non-party). Here, Albus is filing multiple suits **in multiple districts** to identify any information it can use against PBC. Such fishing expeditions are outside the scope of Rule B. Moreover, Albus is seeking information from MED that it should be seeking directly from PBC. New York law is clear that "[i]f documents are available from a party, it has been thought preferable to have them obtained through Rule 34 rather than subpoenaing them from a non-party witness pursuant to Rule 45." *Zoological Soc. of Buffalo, Inc. v. Carvedrock, LLC*, No. 10-CV-35A (Sr), 2013 WL 5652759, at *3 (W.D.N.Y. Oct. 15, 2013) (ordering the issuing party to reimburse the non-party witness for reasonable costs incurred).

Accordingly, Albus should be sanctioned for its inappropriate use of a subpoena and its attempt to obtain unauthorized discovery, including payment of MED's legal fees incurred for the filing of the instant motion.

## CONCLUSION

For the foregoing reasons, MED respectfully requests that the Court enter an Order: (a) vacating the Attachment; (b) quashing the subpoena; (c) awarding MED reasonable costs and attorneys' fees that it incurred in responding; and (d) issuing any other relief the Court deems proper.

Dated: November 30, 2015                K&L GATES LLP

Respectfully Submitted,

/s/ George K. Kontakis (GK-0484)
K&L Gates, LLP (NY)
599 Lexington Avenue
New York, New York 10022
Tel: 212-536-4021
Email: george.kontakis@klgates.com

*Attorneys for Garnishee Med Brokerage & Management Corporation*

## CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that on November 30, 2015, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Edward W. Floyd
Eaton & Van Winke LLP
3 Park Avenue 16th Floor
New York, NY 10016
212-779-9910
Fax: 212-779-9928
Email: efloyd@evw.com
*Attorney for Plaintiff Albus Denizcilik Ltd. Sti.*

William R. Bennett, III
Blank Rome LLP
405 Lexington Avenue
New York, NY 10174
212-885-5000
Fax: 917-332-3796
Email: wbennett@blankrome.com
*Attorney for Defendant Progress Bulk Carriers Ltd.*

On November 30, 2015, I also provided an electronic copy via email of the foregoing to counsel for the other garnishee, as follows:

Peter D. Wolf, Esq., JD, LLM
Law Offices of Peter D. Wolf P.C.
First Bank Building
25 Main Street – Suite B
Hastings-on-Hudson, NY 10706
Tel: (914-478-8000
Fax: (914)478-0001
Email: seawolf@cloud9.net
*Attorney for Garnishee Ibrahim Mazman*

/s/ George K. Kontakis (GK-0484)
*Attorney for Garnishee Med Brokerage & Management Corporation*